**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                        NO. 4:06CR00218-02 JLH

DOMINIC R. JACKSON                                                          DEFENDANT

## OPINION AND ORDER

Dominic R. Jackson was indicted and convicted on six counts of drug-related offenses.[1]  On

Count 1, the jury found Jackson guilty of possession with intent to distribute 50 grams or more of

cocaine base.  On Count 2, the jury found him guilty on the charge of conspiracy to possess with

intent to distribute 50 grams or more of cocaine base.  On Count 3, the jury found him guilty of

possession with intent to distribute 200 grams of cocaine hydrochloride.  On Count 4, the jury found

him guilty of possession with intent to distribute less than 5 kilograms of marijuana.  On Count 5,

the jury found him guilty of conspiracy to possess with intent to distribute less than 5 kilograms of

marijuana.  On Count 6, the jury found him guilty of possessing a firearm during and in relation to

and in furtherance of a drug trafficking crime.

At the conclusion of the government's presentation of evidence, Jackson moved for a

judgment of acquittal, and he renewed the motion after all of the evidence was received and before

the case was submitted to the jury.  On both occasions, the Court reserved a decision on the motion

pursuant to Rule 29(b) of the Federal Rules of Criminal Procedure.  After the jury returned its

---

[1] Elias Rhodes was indicted with Jackson on all six counts.  On the day before trial,
Rhodes entered into a plea agreement pursuant to which he entered a plea of guilty on Counts 2
and 6, and the remaining counts were dismissed as to him.

verdicts, the Court invited briefs on the issue of whether the evidence was sufficient to support a conviction.  Jackson then filed a written motion for judgment of acquittal, accompanied by a brief.

# I.

The charges in this case are based upon the results of a search of the premises at 3505 West 25th Street, Little Rock, Arkansas, during the morning of November 3, 2005.  Information provided to law enforcement officers several days before the search indicated that Elias Rhodes and Peter Robinson lived at the address, but at trial Robinson testified that he lived across the street and leased the property for Rhodes's benefit because Rhodes was a long-time friend who had no place to stay. On October 29, 2005, a confidential informant went into the house and obtained narcotics from Robinson.[2]

The house was placed under surveillance at 7:30 the morning that the search warrant was executed.  There were four vehicles in the backyard, including a white Jeep and a red Chevrolet Caprice.  Two couches were in the living room, one green and one white.  An entertainment center was located in the living room in a place where someone sitting on the white couch would be facing it.  When the officers entered the house to conduct the search, they found Jackson sleeping on the white couch, which was near the green one.  Two firearms were found on the green couch, underneath the couch cushion.  A bag of marijuana was found on the white couch, also underneath the couch cushion.  In the corner of the living room, the law enforcement officers found a brick of marijuana in a Budweiser cardboard container.  Bags of narcotics were found on the entertainment center, along with an aerosol can with a false bottom containing seven individual bags of crack

---

[2] Robinson was not charged.  The government promised Robinson that if he would testify truthfully at trial he would not be charged.

cocaine.  Also on the entertainment center, the officers found a white set of scales and a black digital scale.

Rhodes was in the bedroom when the search warrant was executed.  The officers found a bag of crack cocaine in his pocket.  Also in the bedroom, the officers found a cigar box containing $1,078 in currency.  Near the cigar box, the officers found a white plastic bag containing a brick of marijuana.  Officers also found bags of powder cocaine in the bedroom.

During the course of the search, Dominic Jackson was interrogated.  He told the interrogating officer that he had purchased the red Chevrolet Caprice approximately three days earlier, and that he had a bag of marijuana in the car.  A search of the car found two bags of marijuana in the front seat.  The officers also found on the floor an aerosol can with a false bottom in which were found bags of marijuana and bags of crack cocaine packaged individually for sale in packaging similar to the packaging found in the house.  The total weight of the crack cocaine found in the vehicle was 6.5083 grams.  The total weight of the marijuana found in the vehicle was 12.6 grams.  An officer testified that these are distributable amounts.

Including the narcotics found in the house and in the car, the officers found 71 grams of crack cocaine, 4,234 grams of marijuana, and 227.1 grams of cocaine hydrochloride.

## II.

In reviewing the sufficiency of the evidence to support a guilty verdict, the Court looks at the evidence in the light most favorable to the verdict and accepts as established all reasonable inferences supporting the verdict.  *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002).  A jury verdict must be upheld if substantial evidence supports it.  *Id*.  "Substantial evidence exists if a

reasonable minded jury could have found the defendant guilty beyond a reasonable doubt." *Id.* The standard of review is a strict one, and the Court should not lightly overturn the jury's verdict. *Id.*

To establish a conspiracy to distribute drugs, the government must prove: (1) that there was a conspiracy, *i.e.*, an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy. *United States v. Weaver*, 554 F.3d 718, 721 (8th Cir. 2009). A conspiracy can be established either by direct or circumstantial evidence. *Id.* Once the existence of a conspiracy has been established, "'only slight evidence is required to link a defendant to the conspiracy.'" *Id.* (quoting *United States v. Jiminez-Perez*, 238 F.3d 970, 973 (8th Cir. 2001)). The burden on a defendant challenging the sufficiency of the evidence in a conspiracy case is heavy. *Id.*

A conviction for possession of narcotics with intent to distribute requires proof that (1) the defendant knowingly possessed the controlled substance and (2) the defendant intended to distribute the controlled substance. *Id.*

Jackson argues that the evidence was insufficient to support the conspiracy convictions, the convictions for possession of the narcotics found in the house, and the conviction for possession of the firearms found in the house. With respect to the drugs and the guns found in the house, the government relies upon a theory of constructive possession. Constructive possession is established if the defendant has control, ownership, or dominion over the premises. *United States v. Claybourne*, 415 F.3d 790, 795-96 (8th Cir. 2005).

The first issue is whether the evidence was sufficient to permit a reasonable jury to find beyond a reasonable doubt that Dominic Jackson entered into a conspiracy with Elias Rhodes to distribute cocaine base, cocaine hydrochloride, and marijuana. There was no direct evidence of a

4

conspiracy between them.   Rhodes refused to testify, and no witness testified that he actually observed Rhodes and Jackson participating together in a narcotics transaction or preparing narcotics for distribution.   No witness testified that he observed Jackson participating in distribution of narcotics.   Peter Robinson testified that Jackson had been living in the house with Rhodes for approximately three or four weeks.   That testimony was consistent with Jackson's statement to the police that Rhodes had given him marijuana to smoke every day for three weeks.   Robinson had seen Jackson's car, the red Caprice, coming and going during that period of approximately three weeks. Robinson had seen crack cocaine on a table, an entertainment center, or some such piece of furniture. He had also seen marijuana in the home.   He had seen the scales that were found on the entertainment center, and he had seen one of the firearms on the couch.   Robinson testified that he had not seen drug transactions in the house, but from the outside he saw a lot of traffic.

As noted, on the morning of the search, surveillance of the house began at 7:30, and Jackson's vehicle was at the house at that time.   When the search warrant was executed, Jackson was asleep on the white couch, in which was found marijuana.   He was in close proximity to the green couch where the two firearms were found.   A person sitting on the couch where he was sleeping would see the entertainment center where narcotics and the scales were found.   The aerosol can with a false bottom in which narcotics had been packaged in plastic bags for individual sale also sat on that entertainment center.   When Jackson's red Caprice was searched that same morning, marijuana and cocaine were found packaged in similar packaging and hidden in an aerosol can with a false bottom in a manner substantially similar to the aerosol can with the false bottom found in the entertainment center in the living room of the house.

"Evidence of association or acquaintance with a known drug dealer and mere presence at the location of the crime alone, even when coupled with knowledge of crime, are not sufficient to establish guilt on a conspiracy charge." *Cruz*, 285 F.3d at 701. Here, however, there is something more than evidence that Jackson associated with Rhodes and was present at the location where Rhodes was selling drugs. In addition to the fact that Jackson was associating with Rhodes and was present where Rhodes was selling drugs, Jackson's vehicle contained drugs packaged for distribution and concealed in an aerosol can with a false bottom in a manner substantially similar to narcotics found in the house. The circumstantial evidence that Jackson conspired with Rhodes to distribute narcotics is this: (1) Jackson had distributable amounts of crack cocaine and marijuana in his car; (2) the drugs were packaged for sale in plastic bags similar to the drugs in the house where Rhodes lived; (3) a portion of the drugs in Jackson's car was hidden in an aerosol can in a manner similar to drugs found in the house; (4) Jackson was regularly present at Rhodes's house for a period of three weeks while drug trafficking was taking place; and (5) Jackson was sleeping on the couch where marijuana was hidden with narcotics and paraphernalia for drug trafficking in plain view, near a place where two guns were kept. This evidence is sufficient to permit a reasonable jury to conclude beyond a reasonable doubt that Jackson conspired with Rhodes to sell the narcotics that were found in the house and in the vehicle. In *Cruz*, the evidence showed merely that the defendant associated with a drug dealer, not that he actually participated in a plan of drug distribution, but here the fact that narcotics were found in Jackson's car packaged for sale and concealed in a manner similar to the narcotics in the house is evidence that Jackson actually participated in a plan of drug distribution. *Cf. United States v. Roberson*, 439 F.3d 934, 942 (8th Cir. 2006).

Turning to the possession counts, the Eighth Circuit has said that constructive possession should not be lightly imputed to one found in another's apartment or home. *United States v. Dunlap*, 28 F.3d 823, 826 (8th Cir. 1994). Mere presence or association with a person who controls drugs is insufficient by itself to prove possession but is circumstantial evidence of possession. *United States v. O'Connell*, 841 F.2d 1408, 1425 (8th Cir. 1988). When determining the sufficiency of the evidence to support a conviction for possession of contraband found in a place other than a defendant's own home, the Court considers the closeness of the relationship between the defendant and the person whose actual possession is not disputed, the presence of valuable or important personal items belonging to the defendant, such as documents, in the same location as the drugs, and the degree to which the association between the defendant and the actual possessor was related to criminal activity. *Dunlap*, 28 F.3d at 826. It requires more evidence of knowledge and control to prove that a defendant constructively possessed contraband found in someone else's residence, as opposed to his own abode. *United States v. Scofield*, 433 F.3d 580, 586 (8th Cir. 2006). Constructive possession may be joint, rather than exclusive. *United States v. Roberts*, 953 F.2d 351, 353 (8th Cir. 1992).

Viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, the Court concludes that a reasonable jury could find beyond a reasonable doubt that Jackson constructively possessed the narcotics and the firearms found at 3505 West 25th Street in Little Rock during the execution of the search warrant on November 3, 2005. While there was no proof that Jackson leased the premises, and no proof that he had a key to the premises, there was proof that he was living there. Robinson, who lived across the street, testified that he believed that Jackson had been living there for approximately three weeks

7

before the execution of the search warrant.  Jackson, himself, told a policeman that Rhodes had given him the marijuana to smoke everyday for the three weeks preceding the execution of the search warrant.  Although none of the clothes or personal items located inside the house were identified as belonging to Jackson, he was sleeping there on the morning of the execution of the search warrant as though he had spent the night there.  His car was already at the house when surveillance began at 7:30 in the morning.  He was sleeping on a couch with marijuana concealed under a cushion.  He was the nearest person in the house to the two firearms that were located underneath the cushions on the other couch, and he was also the nearest person in the house to the entertainment center on which narcotics and paraphernalia for selling narcotics were located.  Although the jury might have concluded that Rhodes, alone, possessed the narcotics in the house, "the evidence need not rule out every reasonable theory of innocence."  *Roberts*, 953 F.2d at 353.  The jury could reasonably conclude that Jackson and Rhodes jointly possessed the narcotics and the firearms in the house inasmuch as (1) Jackson was in the house every day for a period of three weeks prior to the execution of the search warrant; (2) was trusted enough by Rhodes that he was sleeping in the room with a large quantity of drugs and drug paraphernalia, as well as firearms, on the morning of November 3, 2005; (3) Jackson was the person in closest proximity to the narcotics and the firearms in the living room; and (4) Jackson had narcotics in his vehicle, packaged for individual sale, and concealed like those in the house.

## CONCLUSION

After a review of all of the evidence, the Court has concluded that the evidence is sufficient to support the verdict of guilty on each of the six counts.  Dominic Jackson's motion for judgment of acquittal is therefore DENIED.  Document #126.

8

IT IS SO ORDERED this 3rd day of June, 2009.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE